**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JOHNNY PEREZ, | : | |
| | : | |
| Plaintiff | : | |
| | : | CIVIL NO. 14-4853 |
| v. | : | |
| | : | |
| CAROLYN W. COLVIN, | : | |
| Commissioner of Social Security, | : | |
| | : | |
| Defendant | : | |

**REPORT AND RECOMMENDATION**

**RICHARD A. LLORET**                              **October 29, 2015**
**U.S. MAGISTRATE JUDGE**

Johnny Perez ("Perez") alleges the Administrative Law Judge ("ALJ") erred in denying his application for Supplemental Security Income ("SSI") by: (1) improperly rejecting the medical opinion of a psychological consulting examiner, Dr. Robert Naseef; (2) finding that Perez can perform the standing and walking requirements of sedentary work; and (3) failing to include Mr. Perez's moderate limitations in concentration, persistence,  pace and areas of social functioning in her hypothetical question to the Vocational Expert ("VE"). *See* Pl.'s Bf. & Statement of Issues in Supp. of Req. for Review ["Pl. Br"] at 3-4.

After careful review of the evidence and other available materials in the record, I believe the ALJ did not err in determining Perez was not disabled. I respectfully recommend the claimant's request for review be denied.

1

## **PROCEDURAL HISTORY**

Perez protectively filed an application for SSI on November 25, 2010. R. 66. That claim was denied in March of 2011. R. 84. The claimant filed a request for a hearing and appeared before ALJ Anne Chain in November 2012. R. 11. Applying the five-step sequential analysis,[1] the ALJ found Perez had not engaged in substantial gainful activity since November 25, 2010.  R. 72.  At the second stage of the sequential analysis, the ALJ found that Perez suffered from the following severe impairments: HIV infection, psychophysiological insomnia, major depressive disorder, dependent personality disorder, and substance addiction (in reported remission). *Id.* None of these impairments or combination of impairments equaled the severity of one of the listed impairments. *Id.*

In addition, the ALJ found that

the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a) except no more than frequent pushing or pulling with the upper extremities; no more than occasional climbing, balancing, stooping, kneeling, crouching, and crawling; the option to sit or stand at will; no exposure to hazards including unprotected heights and moving machinery; limited to simple routine tasks with short simple instruction and simple work-related decisions with few workplace changes; no more than occasional interaction with the public, coworkers, or supervisors; and no requirement to write reports.

R. 74-75. Based on this RFC finding and Perez's age, education, and work experience,

---

[1] For this analysis, the ALJ considers whether a claimant: (1) is engaged in substantial gainful employment; (2) has one or more severe impairments, which significantly limit his ability to perform basic work; (3) has impairments that meet or equal the criteria associated with impairments in the Social Security Regulations so as to mandate a disability finding; (4) has a Residual Functional Capacity ("RFC") to perform work with his limitations and can return to his previous work with that RFC; and (5) can perform any other work existing in the national economy.  *See* 20 C.F.R. § 416.920(a)(4)(i)-(v).

the ALJ found that he could perform multiple occupations with significant numbers of jobs in the regional and national economies as of the date last insured. R. 79. In concluding her opinion, the ALJ found that the claimant was not disabled. *Id.*

The Appeals Council denied Perez's request for review on June 17, 2014. R. 1-5. He brings this civil action for judicial review under 42 U.S.C. § 405(g).

## FACTUAL HISTORY

Perez testified during the hearing that he had a ninth grade education. R. 16. He was 48 years old at the time of the ALJ decision. R. 66. Perez has no past relevant work. R. 78. He testified that his reading and writing abilities are limited. *Id.* When prompted by the ALJ, Perez stated he has trouble with tasks such as writing letters and filling out applications. *Id.* Perez testified to living mostly with his mother but occasionally spending time at his girlfriend's house. R. 39.Perez testified that he has trouble sleeping at night and as a result he often naps throughout the day. R. 23. Besides napping, Perez's typical day consists mainly of watching television and on his best days he is capable of assisting with some chores around the house. R. 38. Otherwise he says he is unable to perform basic chores and help out around the house and those things are done mostly by his mother or his girlfriend. *Id.* He testified that he doesn't cook because he often burns the food and he doesn't do the laundry because he often mixes up the whites and the colors. *Id.*

Perez claimed that his depression stemmed from years of drug addiction, but he has been clean for four years. R. 52. The claimant also testified to suffering from dizzy spells and severe palm sweats. R. 25-26. He testified that the dizzy spells could occur at

any time and that his last severe one not a week before caused him to fall and left him with a gash in his head. R. 19. Perez claims his hand sweats cause his writing to smear and are constant even in the winter. R. 26.

At the hearing, Vocational Expert Bruce Martin testified about jobs that Perez was capable of performing. Martin listed housekeeping, linen room attendant, and sorter as possible positions based on a less limited hypothetical of Perez's functional capacity. R. 57-59. When asked if Perez would be capable of holding those jobs if he needed to break at will an unscheduled number of times and if he would potentially be absent more than twice per month consistently, Martin said that Perez would not be capable of holding any of those jobs. R. 61-62.

**Medical History**

Perez citied HIV infection, depression, neuropathy, headaches, lightheadedness, dizziness, back pain and severe sweat in his palms as the impairments that qualified him for SSI. R. 374. Perez's medical history, as evidenced by the records before the ALJ, is as follows.

**1.    Dr. Naseef's findings.**

Dr. Robert Naseef saw Perez on January 31, 2011. Dr. Naseef determined that Perez appeared to be chronically mentally ill, and stated concerns about his ability to sustain a full workday. R. 359-60. Perez cited depression for his inability to work. R. 355. Dr. Naseef found that it was highly unlikely that Perez could sustain full-day work as a result of his severe depression, extreme dependency and extreme helplessness. R. 360. Dr. Naseef made this determination based on his own findings and answers given

by Perez regarding his own functionality and capability. R. 355-64.

### 2.    Dr. Buschiazzo's findings.

Dr. Horacio Buschiazzo saw Perez on January 6, 2011. Prior to this examination, Perez complained of pain from a dislocated left shoulder and pain in his calves. R.342. Perez attested to having difficulty sitting down and standing from a bent position. *Id.* Dr. Buschiazzo diagnosed Perez with muscle cramps in his calves, chronic lumbalgia, reactive depression with a paranoid component and he confirmed the HIV+ diagnosis. R. 344. After examination, Dr. Buschiazzo found Perez's physical limitations to be 1 hour of walking or standing per 8 hour day and the ability to lift 20 pounds frequently and 25 pounds occasionally. R. 346. Dr. Buschiazzo found no limitations in standing time or the ability to push/pull. *Id.* Dr. Buschiazzo found Perez to be pleasant and determined that Perez/s memory retention and orientation were normal. R. 343.

### 3.    Dr. Rohar's findings.

Dr. John Rohar examined Perez on March 15, 2011. Dr. Rohar found that Perez can perform simple, routine, repetitive work in a stable environment. R. 374. Dr. Rohar estimated that Perez would be capable of functioning in production oriented jobs based on his assessment of Perez's mental and physical functionality. *Id.* Perez was also determined to be capable of asking simple questions and receiving instructions. *Id.* He further concluded that the previous assessments done on Perez overestimated the limitations caused by his mental and physical impairments. *Id.*

### **DISCUSSION**

A claimant is disabled if he is unable to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  20 C.F.R. § 416.905; *see also Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 503 (3d Cir. 2009).  In reviewing an ALJ's disability determination, I must accept all the ALJ's fact findings if supported by substantial evidence or "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 390 (1971) (citing *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also* 42 U.S.C. § 405(g).  I may not weigh the evidence or substitute my own conclusions for those of the ALJ. *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011).  However, with respect to the ALJ's legal conclusions and application of legal principles, I must conduct a "plenary review" to make that determination. *Payton v. Barnhart*, 416 F. Supp. 2d 385, 387 (E.D. Pa. 2006).

## A.  The ALJ properly discounted Dr. Naseef's opinion.

A treating source's opinion is entitled to controlling weight when supported by medically acceptable clinical and laboratory diagnostic techniques and is consistent with other substantial evidence in the record.[2]  *See* 20 C.F.R. § 416.927(c)(2); SSR 96-2p,

---

[2] A treating source is a "physician, psychologist, or other acceptable medical source" who provides a patient with "medical treatment or evaluation," and has an "ongoing treatment relationship with the patient."  20 C.F.R. § 404.1502.  A medical source may be considered a treating source where the claimant sees the source "with a frequency consistent with accepted medical practice for the type of treatment . . . required for [the claimant's] condition(s)." *Id.*

1996 WL 374188 (July 2, 1996).  An opinion may be rejected "on the basis of contradictory medical evidence." *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999); *see Jones v. Sullivan*, 954 F.2d 125, 129 (3d Cir. 1991) (contradictory opinions by state agency physicians was a sufficient basis for refusing to give a treating physician's conclusory opinion controlling weight); *Brown v. Astrue*, 649 F.3d 193, 197 (3d Cir. 2011) (ALJ "clearly explained" why she gave greater weight to the opinion of a medical consultant than to treating physician). So too may an opinion be rejected if there is insufficient clinical data, *see Newhouse v. Heckler*, 753 F.2d 283, 286 (3d Cir. 1985), or if the opinion is contradicted by the physician's own treating notes or the patient's activities of daily living. *See Smith v. Astrue*, 359 F. App'x 313, 316-17 (3d Cir. 2009). The opinion may be accorded "more or less weight depending upon the extent to which supporting explanations are provided."  *Plummer*, 186 F.3d at 429 (*citing Newhouse*, 753 F.2d at 286).

Where a treating source's opinion is not given controlling weight, the ALJ must determine what weight to give the relevant medical sources by considering factors such as the length of the treatment relationship and frequency of visits, nature and extent of the treatment relationship, whether the medical source supports the opinion with medical evidence, whether the opinion is consistent with the medical record, and the medical source's specialization.  20 C.F.R. § 404.1527(c).  In choosing to reject the treating physician's assessment, an ALJ may not make "speculative inferences from medical reports" and may not reject a treating physician's opinion "due to his or her own

7

credibility judgments, speculation or lay opinion." *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000).

Opinions from non-treating sources who have examined a claimant also garner significant weight.[3]  20 C.F.R. § 416.927(d)(1); *see Chandler*, 667 F.3d at 361. While they do not receive as much consideration as a treating source's opinions, they warrant more weight than the opinion of non-examining medical sources.  20 C.F.R. § 416. 927(d)(1); *see also Brownawell v. Comm'r of Soc. Sec.*, 554 F.3d 352, 257 (3d Cir. 2008). Testimony from a non-examining source also must be considered by the ALJ, but is not entitled to deference.[4]  20 C.F.R. § 416.927(f); SSR 96-6p, 1996 WL 374180 at *2.  It is error to "credit the testimony of a consulting physician who has not examined the claimant when such testimony conflicts with testimony of the claimant's treating physician." *Franklin v. Barnhart*, No. 05-2215, 2006 WL 1686692, at *11 (E.D. Pa. June 13, 2006) (quoting *Dorf v. Bowen*, 794 F.2d 896, 901 (3d Cir. 1986)).

As noted above, pursuant to 20 C.F.R. 416.927(c)(2), when deciding that a treating source's opinion is not entitled to controlling weight, the ALJ must evaluate the opinion by considering certain factors such as: the length of the treatment relationship, the frequency of visits, the nature and extent of the treatment relationship, whether the source has supported his or her opinion with medical evidence, whether the opinion is

---

[3]  Non-treating sources are usually doctors who have examined the claimant, but not in the context of an ongoing treatment relationship.  20 C.F.R. § 416.902.  A source is non-treating if a claimant visits a doctor solely to obtain a report in support of his or her claim.  *Id.*

[4] A non-examining source is an acceptable medical source who has not examined the claimant, but who provides a medical opinion of the case.  20 C.F.R. § 416.902.

consistent with the medical record and the medical source's specialization.  20 C.F.R. 416.927(c)(2); *see also* SSR 96-2p, 1996 SSR LEXIS 9, 1996 WL 374188, at *4. "While the ALJ is, of course, not bound to accept physicians' conclusions, he [or she] may not reject them unless he first weighs them against other relevant evidence and explains why certain evidence has been accepted and why other evidence has been rejected." *Cadillac v. Barnhart*, 84 Fed. App'x. 163, 168 (3d Cir. 2003)  (not precedential) (quoting *Kent v. Schweiker,* 710 F.2d 110, 115 n.5 (3d Cir. 1983)) (alteration in original, internal quotations omitted).

The crux of the claimant's argument centers on supposed errors made by the ALJ in evaluating Dr. Naseef's report. Pl. Br. at 6. This report was rejected by the ALJ because "[t]he doctor appears to have relied heavily on the claimant's subjective report of symptoms and limitations, which are not supported by the totality of the evidence, including the claimant's own numerous reports of no depression and the taking of psychiatric medication only on an 'as needed' basis." R. 78. For legal support, the claimant cites to Third Circuit authority, holding that the behavior of a patient during the course of his or her treatment is not indicative of a claimant's ability to work. *See Brownawell v. Comm'r of Soc. Sec.*, 554 F.3d 352, 357 (3d Cir. 2008). According to the claimant, the ALJ erred in much the same way as the ALJ in *Brownawell*. Pl. Br. at 7.

In response, the Commissioner argues that the ALJ clearly stated "the record contained no formal mental health treatment records, and, moreover, during examinations with his physicians, Plaintiff denied being depressed, reported that

medication helped his symptoms, and presented with a normal mood and appropriate affect." Def. Br. at 5 (citing R. 76-77). The Commissioner cites a number of examples that clearly contradict Dr. Naseef's findings. These include instances of well-controlled depression (R. 454), improved symptoms by taking Cymbalta (R. 419-21), denial of anxiety and depression in August of 2012 (R. 406), and an examination of the plaintiff indicated that he "[w]as grossly oriented to person, place and time, and that his mood and affect were normal and appropriate (R. 407). *See* Def. Br. at 5. The Commissioner also argues that the reliance on subjective complaints, and the subsequent memorializing of those complaints in a medical report, does not transform subjective complaints into objective medical findings. *See id.* at 6 (citing *Craig v. Chater*, 76 F.3d 585, 590 n. 2 (4th Cir. 1996); *Sanborn v. Colvin*, Civ. A. No. 13-224, 2014 WL 3900878, at *12 (E.D. Pa. Aug. 11, 2014)).

The Commissioner contrasts Dr. Naseef's January 2011 report with volumes of information that "provides a more current evaluation of the plaintiff's condition." *Id.* at 7. In a number of instances, when Perez took his medication as directed, his mental condition improved. R. 406, 412, 419, 421, 454. Perez's activities of daily living are also well-rounded: he does many chores around the house, including dishes and sweeping the floors. R. 37-40. He takes public transportation by himself, goes shopping, pays his bills, and handles his savings account. R. 177-79. Perez also testified that he spent time with his mother and his girlfriend. R. 40.

In addition, the Social Security Regulations permit an ALJ to discount the testimony of a claimant on the grounds that his or her statements do not receive support

from the objective medical evidence within the record. *See* SSR 96-7p. The use of Cymbalta curbed some of Perez's symptoms. R. 419-21. When Perez stopped taking the drug, his symptoms returned, even though his doctor advised him of the proper method of taking the drug. R. 414. And there are numerous citations in the record that show the claimant had a normal mood, appropriate affect, oriented to person, place, and time. *See* R. 407, 414.

The claimant improperly relies on *Brownawell.* In that case, the Third Circuit rejected the great weight assigned by the ALJ to the medical opinion of a non-examining psychologist who disagreed with two treating physicians. *See* 554 F.3d at 357. The non-examining opinion was subject to "errors in logic," and the non-examining psychologist was the only expert who stated that the claimant could work. *Id.* at 357-58. The treating physician had treated claimant over a three year period, and twice stated that a finding of disability was justified. *Id.* at 358. By contrast, Dr. Naseef's opinion is based on one examination of Perez, not a 3-year course of treatment. Nor does Dr. Naseef's opinion take into account the significant evidence in the record of Perez's ability to function if he takes his medication.

By contrast, Dr. Rohar's opinion directly addresses the shortcomings in Dr. Naseef's. Dr. Rohar wrote that "[i]t appears that [Dr. Naseef] relied heavily on the subjective report of symptoms and limitations provided by the claimant. However, the totality of the evidence does not support the claimant's subjective complaints. The evidence provided by the examining source is based on an isolated exam and is an overestimate of the severity of [Perez's] limitations." R. 374. The ALJ assigned this

opinion great weight because it was consistent with the record. *See* R. 78; *see also* 20 C.F.R. § 416.927(c)(3). Dr. Naseef's was wholly inconsistent with the record.

Here, unlike *Brownawell*, the claimant responds appropriately to medication when he follows the instructions of his doctor. *See, e.g.* R. 414; *see also* R. 406 (noting that Perez was taking Cymbalta "to help him sleep rather than for depression"). Records from 2012 show claimant exhibiting a normal mood. R. 414, 421. While filling out a temporary disability form in September of 2012, Perez made no mention of any alleged mental health impairments. R. 424. These factors form a substantial basis for believing that Perez's mental issues were not as severe as he contends.

**B. There was substantial evidence that Perez could perform sedentary work.**

The claimant argues that the ALJ erred at step 4 by finding that Perez could perform sedentary work. *See* Pl. Br. at 9. Perez contends that this finding contradicts the medical opinion of Dr. Buschiazzo, who stated that Perez could only stand and walk for less than an hour during each eight-hour workday. *See id.* (citing R. 78). Perez contends that sedentary work requires periods of standing or walking that "total up to two hours out of an eight-hour workday." *Id.* at 10 (citing SSR 83-10). Claimant alleges that the ALJ erred in failing to explain the rejection of Dr. Buschiazzo's finding with respect to the claimant's walking and standing capacity. *Id.*

The Commissioner disagrees, arguing that there is substantial evidence in the record that supports the ALJ's finding. The Commissioner's brief provides a helpful timeline of a number of facts before the ALJ when making the RFC determination. *See* Def. Br. at 12-13. These facts were summarized by the Commissioner as follows:

12

- Plaintiff's physical examinations had normal findings including: full range of motion in the upper and lower extremities; full strength in the upper and lower extremities; full range of motion in the cervical, thoracic and lumbar spines; normal curvature in the cervical, thoracic, and lumbar spines; negative bilateral leg raises; normal arterial pulses; and normal bilateral circulation (R. 344);
- Plaintiff was consistently described as having a normal gait (R. 344, 421);
- Although Plaintiff reported some back pain in January and March 2012, by May 2012, Plaintiff reported that he was doing well, had no complaints, and denied any muscle or joint pain, swelling, or weakness  (R. 411-13);
- Plaintiff's back pain was treated conservatively with medication, and Plaintiff did not experience any medication-related side effects from Motrin or Flexeril, the medications he was prescribed for pain (R. 32);
- At the ALJ hearing in November 2012, Plaintiff testified that his back had not been hurting as badly as in the past, and that he was not taking any medication for back pain (R. 32);

*See* Def. Br. at 13 (transcript citations in original; record citations provided).

Additionally, Perez did not need a cane to walk, there were no x-rays showing disabling pain, and his HIV positive status did not physically manifest itself. R. 74-75. Given these factors, I see no error in the ALJ's RFC determination.

Perez's argument centers on Dr. Buschiazzo's opinion that Perez can stand and walk for one hour or less per workday. Pl. Rep. Br. at 3-4. Claimant contends that "if Mr. Perez is limited to standing and walking for one hour or less, he cannot perform sedentary work, even with an option to sit or stand at will." *See id.* at 4 (citing SSR 96-9p). The ALJ assigned "great weight" to Dr. Buschiazzo's opinion, noting that "the claimant was capable of lifting and carrying 25 pounds occasionally and 20 pounds frequently, standing and walking one hour or less out of an eight-hour workday, and sitting without limitation with additional postural limitations." R. 77-78.

Perez's argument misstates the requirements of SSR 96-9p. The regulation provides that

> Although a sedentary job is defined as one that involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. *"Occasionally" means occurring from very little up to one- third of the time,* and would generally total no more than about 2 hours of an 8-hour workday. Sitting would generally total about 6 hours of an 8-hour workday.

*Id.* (emphasis supplied). Standing and walking no more than 1 hour per day fits

comfortably within the emphasized language, above.[5] SSR 83-10, to which Perez cites in

his opening brief, does not change the analysis.  It contains almost identical language:

> "Occasionally" means occurring from very little up to one-third of the time. Since being on one's feet is required "occasionally" at the sedentary level of exertion, periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday . . .

*Id.*

---

[5] This point is clarified later in 96-9p:

> The full range of sedentary work requires that an individual be able to stand and walk for a total of approximately 2 hours during an 8-hour workday. If an individual can stand and walk for a total of slightly less than 2 hours per 8-hour workday, this, by itself, would not cause the occupational base to be significantly eroded. Conversely, a limitation to standing and walking for a total of only a few minutes during the workday would erode the unskilled sedentary occupational base significantly. For individuals able to stand and walk in between the slightly less than 2 hours and only a few minutes, it may be appropriate to consult a vocational resource.

Here, the claimant did not ask that the occupational base should be adjusted to reflect the difference between being able to walk one hour a day versus two. Neither the regulation's language, which makes such a consultation discretionary, nor the circumstances of this case suggest that a failure to ask the vocational expert such a hypothetical was error. Certainly, it is difficult to credit the notion that the failure to ask such a question was error in the absence of a request from counsel. If it was, it was harmless, as I discuss later.

In his reply brief, Perez extracts the following from *Sherman v. Astrue*, 617 F. Supp. 2d 384 (W.D. Pa. 2008):

> [T]he ALJ failed to adequately explain his apparent rejection of the [limitation that Sherman was only able to stand/walk for one to two hours in an eight-hour workday], particularly in light of the fact that in fashioning Sherman's RFC, he accorded 'great weight' to [the consulting examiner's] opinion." 617 F. Supp. 2d at 395.

Pet. Rep. Br. at 3. The quote omits the context, and the context readily distinguishes this case from *Sherman.* The examining physician in *Sherman* also limited the claimant to sitting for no more than 4 hours per day, which meant that Sherman could work no more than 6 hours per day – not a full work day. 617 F. Supp. 2d at 395. Since residual functional capacity requires the ability to work for 8 hours a day, 5 days a week, the ALJ's failure to deal with this limitation was clear error, especially since the ALJ placed great weight on the examining physician's opinion. *Id.* In Perez's case, by contrast, the examining physician's opinion did not limit Perez to less than a full day's work. R. 346 (noting "no limitation" to sitting for an eight hour day).

There is more. The ALJ in *Sherman* found that the claimant had an RFC limited to "light" work, not sedentary work, as in this case. 617 F. Supp. 2d at 394. "Light" work requires that a claimant be able to walk and stand throughout an 8-hour shift. *See* SSR 96-9p. The ALJ's failure to explain why he ignored the examining physician's sit/walk limitation was critical, because the sit/walk limitation disqualified claimant from "light"

work altogether. *Id.* Here, the physician's functional limitation fits comfortably within the work category selected by the ALJ: "sedentary."[6]

In short, the ALJ committed no error. Even if I were to conclude that the ALJ should have gently tweaked the hypothetical, or consulted with the vocational expert on the issue of whether walking one hour a day, as opposed to two, would limit the occupational base, the error would be harmless.

As a general matter, harmless error analysis is applicable to review of agency decisions. See *Shinseki v. Sanders*, 556 U.S. 396, 407-10 (2009) (harmless error analysis applied to review of VA administrative determination); *McLeod v. Astrue*, 640 F.3d 881, 887-88 (9th Cir. 2011) (applying the harmless error analysis in *Sanders* to the review of Social Security determinations); *Watts ex rel. D.W. v. Astrue*, No. CIV. 12-4116, 2013 WL 2392909, at *3-4 (E.D. Pa. June 3, 2013) (same); bu*t see Sojourner v. Astrue*, No. CIV.A. 09-5662, 2010 WL 4008558, at *4-6 (E.D. Pa. Oct. 12, 2010) (*Sanders* applies in VA cases, not necessarily in Social Security cases). Harmless error analysis requires a particularized evaluation of the specific circumstances of the case to determine whether a supposed error would make a difference on remand. *See Sanders*, 556 U.S. at 408, 411-12 (harmless error focuses on "the facts and circumstances of the particular case" and counsels a "hesitancy to generalize too broadly about particular kinds of errors" because "the specific factual circumstances in which the error arises may well make all the difference.")

---

[6] It is worth noting that, as the name sedentary suggests, a number of jobs in this category may require no walking at all, *see, e.g.,* assembly line sorter, a job alluded to by the vocational expert during his testimony. R. 59.

Remand on the ephemeral grounds suggested by Perez would be to engage in the kind of "ping-pong game" the Supreme Court has cautioned against. *See NLRB v. Wyman-Gordon*, 394 U.S. 759, 766 n. 6 (1969); *see also Gain v. Colvin*, No. 12-5964, 2013 WL 6330658, at *6 (E.D. Pa. Dec. 5, 2013) (applying the *Wyman-Gordon* analysis to a Social Security case). The RFC analysis provided by the ALJ is thorough and complete. Over the course of a number of pages, the ALJ discussed many of Perez's symptoms, the history of his medical care, and the numerous doctors who treated him for different conditions. *See* R. 74-78. The vocational expert was questioned at length about the effect of a number of functional limitation possibilities, including allowing sitting for eight hours and sitting and standing at will. R. 60. His answer to that particular limitation was that the same number of jobs would be available. R. 61. I fail to see how limiting Perez to one hour of walking per day would have changed the VE's – or the ALJ's – opinion. A limitation to jobs in which the claimant can sit or stand at will seems more than adequate to account for Perez's supposed limitation to walking only one hour a day.

Given the facts in this case and the overall picture of Perez's condition, I find that the claimed "error" – and I do not concede that an error occurred – was harmless: it would make no difference to the result on remand. *See Sanders*, 556 U.S. at 411-12.

C.   **The ALJ's hypothetical questions adequately addressed Perez's social functioning and concentration, persistence and pace.**

The claimant's final argument splits into two parts: the ALJ posed hypothetical questions that did not address her own findings that the claimant suffers from moderate

difficulties with respect to (1) social functioning an (2) concentration, persistence, or pace. *See* Pl. Br. at 11 (citing R. 73-74). I will address both of these arguments below.

As a general matter, *Chrupcala v. Heckler*, 829 F.2d 1269 (3d Cir. 1987) is instructive here. That case held a hypothetical question posed to a vocational expert must include all of the claimant's impairments "adequately supported" by the available record. *See* 829 F.3d at 1276 (citing *Podedworny v. Harris*, 745 F.2d 210 (3d Cir. 1984); *Wallace v. Secretary*, 722 F.2d 1150 (3d Cir. 1983)). *Chrupcala* granted a reversal due to a failure of the VE's question to take into account the "constant and severe pain which appellant testified to and which we have explained was supported by objective medical findings in the record." See 829 F.3d at 1276. More recent decisions from the Third Circuit echo the importance of a question posed to a vocational expert that contains a complete picture of the claimant's established impairments on the record. *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005).

      a.  *Social functioning*

The first claim is that the ALJ's restriction to only occasional interaction with the public, coworkers, and supervisors failed to account for the claimant's moderate difficulties in social functioning. Pl. Br. at 11. Social functioning relates to the "capacity to interact appropriately, effectively, and on a sustained basis with other individuals." 20 CFR Pt. 404, Subpt. P, App. 1, § 12.00(C)(2). The ALJ stated Perez suffered from moderate impairments in areas of social functioning, particularly highlighting times where he isolated himself for a number of days and experienced paranoia. R. 72.

In response, the Commissioner states that the RFC and hypothetical question posed to the VE was supported by substantial evidence on the record. Def Br. at 17. With respect to the claimant's social functioning, in 2010 Perez "indicated that he lived with family, used public transportation alone, could go out alone, shopped in stores alone for food and clothes, talked on the phone, and got along with authority figures." *Id.* at 17-18 (citing R. 177-82).  In January of 2011, he stated that he had a relationship with his son, his girlfriend, and his grandchildren. *See id.* at 18 (citing R. 181, 412).

I am not convinced by the claimant's argument. The ALJ restricted him to "work requiring simple routine tasks, short simple instructions, simple-work related decisions, and few workplace changes." R. 57. The positions identified by the VE include house cleaner positions (323.687-014), assembler (723.684-018), and linen room attendant (222.387-030). R. 58. The VE also identified positions such as a sorter (521.687-086), a dresser (208.587-010), and an inspector (976.684-018). R. 59. These jobs also took into account a limitation on the ability to sit and stand at will. *Id.* Additional questioning from the claimant's attorney at the hearing focused not on the social functioning shortcomings of the hypothetical, but rather issues related to attendance at work and physical abilities. R. 62-63.

The ALJ did not err in posing these hypothetical questions to the VE. *Chrupcala* simply requires that any questions posed to the VE demonstrate "adequate support" of the record. 829 F.2d at 1276. The limitation that restricted Perez to only occasional interaction with members of the public and supervisors reflects the social functioning that was developed and analyzed on the record. Not only did one doctor find him in a

19

normal mood (R. 343), but another found him having unremarkable behavior (R. 357)[7],

which does not indicate more than moderate social functioning limitations. The ALJ did

not err.

      b.  *Concentration, persistence, and pace*

The claimant alleges that there was a flaw in the ALJ's hypothetical which

omitted Perez's limitations of concentration, persistence, and pace. Pl. Br. at 12. The

regulations states that "concentration, persistence, and pace [are] the ability to maintain

concentration long enough to timely and appropriately complete tasks commonly found

in work settings." *See id.* (citing 20 CFR Pt. 404, Subpt. P., App. 1 § 12.00(C)(3). The

ALJ's hypothetical to the VE restricted the claimant to work requiring simple routine

tasks, short simple instructions, and few workplace changes. *Id.* (citing R. 59). The

Commissioner disagrees with the claimant's argument that the ALJ erred, buttressing

her position with a number of cases that state that moderate limitations in

concentration, persistence, and pace are consistent with restrictions limiting the

claimant to simple, routine tasks. *See* Def. Br. at 18-19 (citing *Parks v. Comm'r of Soc.*

*Sec.*, 401 F. App'x 651, 655-56 (3d Cir. 2010); *McDonald v. Astrue*, 293 F. App'x 941,

946-47 (3d Cir. 2008); *Menkes v. Astrue*, 262 F. App'x 410, 412-13 (3d Cir. 2008)).

---

[7] Though the doctor who found Perez having "unremarkable behavior" was Dr. Naseef, to whose opinion the ALJ appropriately assigned no weight, I include this citation only to show an agreement among medical doctors whose final diagnoses vary widely. For instance, Dr. Naseef found a number of "extreme" limitations R. 361. Dr. Buschiazzo called him "a pleasant, 46 year-old Hispanic male, Spanish-speaking, looking his stated age, normally developed, alert, awake, orientated, cooperative, and in no acute distress." R. 343.

The Commissioner concludes that "the ALJ reasonably accounted for all of Plaintiff's credible limitations with regard to concentration, persistence, or pace when he limited Plaintiff to 'simple routine tasks, with short simple instruction[s] and simple work-related decisions with few workplace changes . . . and no requirement to write reports.'" *See* Def Br. at 19 (citing R. 74-75). This RFC was constructed using pieces of different medical reports which showed Perez prepared meals which took a half hour to complete, paid his bills, had a savings account (R. 179-80), watched movies (R. 181-82), and could perform some basic math. R. 358. Further, the report that Perez cites, which is the analysis from Dr. Rohar, found that he could perform simple tasks, the same sort of tasks that the ALJ accounted for in the hypothetical question to the VE.  R. 374.

Perez argues moderate limitations in concentration, persistence, and pace must be explicitly included in a hypothetical to a VE and that a limitation to unskilled tasks is not adequate. *See* Pl. Br. at 13. In support of this position, the claimant cites to *Ramirez v. Barnhart*, 372 F.3d 546 (3d Cir. 2004), where an ALJ's hypothetical limiting a claimant to simple, one-to-two steps tasks failed to take into account that the claimant "*often* suffered from deficiencies in concentration, persistence and pace." *See* 372 F.3d at 554 (emphasis in original).

Later cases "found the distinction between a plaintiff who 'often' suffers from deficiencies in concentration, persistence and pace and one who suffers only "moderate" deficiencies dispositive in approving the ALJ's hypothetical limiting the plaintiff to simple, routine tasks." *See Douglas v. Astrue*, No. 09-1535, 2011 WL 482501, at *4 (E.D. Pa. Feb. 4, 2011) (citing *McDonald v. Astrue*, 293 Fed. App'x 941, 946 (3d Cir. 2008)).

The Third Circuit in *McDonald* "determined a hypothetical limiting plaintiff to 'simple, routine tasks' was sufficient to account for a moderate limitation in concentration, persistence and pace." *See id.* at *5. While the claimant in *Ramirez* "often" suffered from deficiencies in concentration, persistence, and pace, the claimant in *McDonald* did not. *Id.*; *see also Menkes v. Astrue*, 262 Fed. App'x 410-12 (3d Cir. 2008) (finding a hypothetical which included a limitation to simple, routine tasks sufficient to allow for moderate limitations in concentration, persistence, and pace); *Reid v. Astrue*, No. 08-2300, 2009 WL 2710243, at *6 (E.D. Pa. Aug. 28, 2009).[8]

Perez's mental impairments are in line with the findings in *McDonald*, where the Third Circuit determined that a hypothetical limiting a plaintiff to simple, routine tasks sufficiently accounted for moderate limitations in concentration, persistence, and pace. *See* 293 Fed. App'x at 946 n. 10. I find nothing in the record that supports the contention that Perez "often" suffers from deficiencies in concentration, persistence, and pace, such that *Ramirez* would apply.

---

[8] In *Reid* Judge Robreno read *Ramirez* consistently with the understanding in *Douglas*:

> The Third Circuit emphasized that such specificity is particularly necessary where the record establishes that plaintiff 'often suffers' from deficiencies in concentration, persistence or pace. *Id.* However, the *Ramirez* Court highlighted that 'there may be a valid reason for the omission' of more specific references in a hypothetical where, for example, 'the ALJ may have concluded' that the deficiencies were 'so minimal or negligible that ... [the deficiencies] would not limit ... [the] ability to perform simple tasks.' *Id.* at 555. In *Ramirez*, because the record established that plaintiff often suffered from mental impairments, the Third Circuit held that the hypothetical, which did not specifically detail such impairments, was fundamentally flawed. *Id.*

*See* 2009 WL 2710243, at *7 (citations in original).

The ALJ limited Perez "to simple routine tasks with short simple instruction and simple work-related decisions with few workplace changes; no more than occasional interaction with the public, coworkers , or supervisors; and no requirement to write reports." *See* R. 74-75. This adequately outlined Perez's credible impairments. I find that the ALJ did not err. Her opinion adequately addressed all of the credible limitations on the record and each of Perez's arguments are without merit.

Accordingly, I make the following

## R E C O M M E N D A T I O N

AND NOW, on October 29, 2015, I respectfully recommend that Perez's request for review be DENIED.

BY THE COURT:

 */s/ Richard A. Lloret_____
RICHARD A. LLORET
U.S. MAGISTRATE JUDGE